UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY FREEMAN,

        Plaintiff,                            Hon. Ellen S. Carmody

v.

                                          Case No. 1:18-cv-245

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 38 years of age on his alleged disability onset date. (PageID.244). Plaintiff possesses an eleventh grade education and worked previously as a housekeeper/cleaner, prep cook, and deli cook. (PageID.61, 93). Plaintiff applied for benefits on March 23, 2015, alleging that he had been disabled since January 30, 2013, due to bi-polar disorder, post-traumatic stress disorder (PTSD), scoliosis, schizophrenia, "possible" lyme disease, anxiety attacks, high blood pressure, back pain, nightly seizures, and "constant" dizziness. (PageID.244-61, 285). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.139-242).

On February 14, 2017, ALJ Sean McKee conducted a hearing with testimony being offered by Plaintiff and a vocational expert. (PageID.83-115). In a written decision dated March 22, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.50-63). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.25-30). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2016. (Tr. 53); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) lumbar scoliosis; (2) degenerative disc disease; (3) attention deficit hyperactivity disorder (ADHD); (4) affective disorders; (5) anxiety disorders; (6) post-traumatic stress disorder (PTSD); and (7) anti-social personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.53-55).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) he can frequently balance on level surfaces; (3) he can occasionally stoop, kneel, crouch, and crawl; (4) he can never tolerate workplace hazards such as unprotected heights or moving mechanical parts; (5) he can perform simple, routine tasks but not at a production rate pace such as assembly line work; (6) he can tolerate occasional changes to a routine work setting; (7) he can have occasional interaction with supervisors and co-workers, but no interaction with the public; and (8) in addition to normal breaks, he is off-task ten percent of the workday. (PageID.55-56).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to

5

question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 276,000 jobs nationally which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.110-13). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

**I.      Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained copies of Plaintiff's medical treatment records. The ALJ described this evidence as follows:

> The claimant has scoliosis and degenerative disc disease. There is no evidence of worsening in these conditions since January 2013. June 2011 imaging of the claimant's spine showed a partial fusion anomaly at C4-C5 most likely developmental and right neural foraminal stenosis at C3- C4. There was mild thoracic degenerative

6

disc disease with mild inferior thoracic levoscoliosis and moderate lumbar degenerative disc disease with mild levoscoliosis (C1F/15-16). A September 2011 MRI of his lumbar spine showed mild lumbar degenerative disc disease most prominent at L4-L5, bilateral neural foraminal stenosis with small left foraminal disc herniation at L4-L5, and bilateral neural foraminal stenosis at L5-S1 (C1F/12). The record does not contain any updated imaging of the claimant's spine. The claimant occasionally complained of chronic back pain to primary care provider Barbara Steinmacher, N.P. (C6F/19, 39). Her notes characterized his back pain as stable and intermittent (C6F/19). The record does not show that he underwent any treatment for back pain and there are no remarkable physical examination findings of record.

In May 2013, the claimant underwent a consultative examination with Thuy Nguyen, D.O. At that time, the claimant described his back pain as "not too disabling" and indicated that his only treatment consisted of using Motrin once every two days (C2F/l). Dr. Nguyen's examination findings were normal aside from limited range of motion of the cervical and lumbar spine. The claimant had normal gait, sensory functioning, strength, and reflexes. He walked normally without pain and demonstrated a negative straight leg-raise bilaterally (C2F/1-4).

The claimant has been diagnosed with various mental impairments such as attention deficit hyperactivity disorder (ADHD), affective disorders, anxiety disorders, posttraumatic stress disorder (PTSD), and anti-social personality disorder (C3F/5; C7F/9). Providers disagree with the claimant's exact diagnoses; however, I have considered his alleged symptoms in full as well as their effect on his functioning.

The claimant began taking Keppra and Risperdal in July 2011 after he was hospitalized for psychiatric reasons. Upon admission, he was demonstrating disorganized, erratic, and unpredictable behavior with increasing irritability and physical aggression (C1F/4). Subsequently, the claimant continued taking Keppra, which admittedly helped keep him calm (C3F/2; C6F/43). In March 2013, he presented to North Country Community Mental Health (CMH) to begin treatment. He underwent therapy and medication management at CMH between April 2013 and November 2013 for symptoms such as rage, breaking objects and yelling, flashbacks to past abuse, and impulsivity (C7F/7). Psychiatrist Lori Katzman, M.D., continued him on Keppra because the claimant stated that his

anger was much more difficult to control when he did not take it (C7F/8). She observed that he presented as polite and cooperative but preoccupied with somatic complaints (C7F/8). She diagnosed him with ADHD, mood disorder, anxiety disorder, PTSD, and antisocial personality disorder. She concluded that his symptoms were likely due to a complicated history of childhood trauma and head injuries, ADHD, and past substance abuse (C7F/9).

In June 2013, the claimant underwent a psychological consultative evaluation with Paul Winkler, Psy.D. The claimant reported having difficulty sleeping and feeling stressed; however, medication stabilized his moods (C3F/2). He reported becoming angry in reaction to hearing somebody yelling (C3F/2). Dr. Winkler noted that the claimant had good hygiene and grooming. He was alert and demonstrated normal motor movements. He made good eye contact and related well to the examiner. He was pleasant, engaging, and exhibited socially appropriate behavior. The claimant reported experiencing auditory hallucinations one year prior (C3F/3).

The claimant continued services with his therapist and Dr. Katzman through November 2013 when he quit services (C7F; C9F/l 7). He did not undergo additional treatment until he returned to primary care provider Barbara Steinmacher, N.P., in August 2014. At that time, the claimant alleged that he still had symptoms of anxiety, compulsive thoughts, and depressed mood. However, he had stopped taking Keppra (C6F/19). Ms. Steinmacher observed that the claimant presented with intact memory and appropriate mood and affect. She restarted him on Keppra (C6F/22).

In February 2015, the claimant restarted treatment at CMH for the same symptoms (C7F/11). However, he only continued services until early April 2015 before he quit again (C9F/16). Around that time, Ms. Steinmacher began prescribing Klonopin and Tegretol for anxiety and irritability (C8F/3).

In January 2016, the claimant underwent neurological testing that ruled out neurological disorders as a possible cause for his mental symptoms (C5F/13-14).

In February 2016, the claimant again began therapy at CMH. He continued reporting many of the same symptoms such as feeling angry much of the time. He stated that he had high anxiety that caused anger. He admitted that he became very abusive when drinking alcohol. He reported that he took Klonopin before going

out with people (C9F/3). The claimant estimated that he took one Klonopin tablet each day (C9F/4). Several days later, Ms. Steinmacher restarted the claimant on a combination of Keppra and Klonopin (Cl2F/3 l). The claimant reported that this medication helped relieve his symptoms (C9F/27).

Therapist Pam Agee, L.M.S.W., often noted that the claimant was not open to learning coping skills for anger because he was preoccupied with the concept that his symptoms were due to a tick bite from 20 years prior or due to some other neurological disorder. However, he was able to control his anger the majority of the time (C14F). The claimant acknowledged that his anxiety was "good" as long as he took his medication (C12F/7).

In January 2017, the claimant was admitted to the hospital for approximately one week for increasing problems with impulse control and anger. He stated that he felt he was unable to control his anger outbursts. Initially, he was very focused on the possibility of Lyme disease as the cause of his symptoms (C16F/1). However, after hospital physicians started him on Invega, he stopped continually referencing his old tick bite and appeared to develop great insight into his psychiatric state. The claimant himself reported feeling "great" on a combination of Keppra, Klonopin, and Invega (C16F/3). The discharging physician concluded that the claimant's prognosis was good as long as he remained compliant with medication. Upon discharge, he demonstrated appropriate eye contact, normal bodily movements, bright mood, and organized and logical thought process. He appeared only slightly anxious (C16F/3-4). Notably, when the claimant first presented for inpatient treatment, he admitted to not taking his medication (C16F/10).

(PageID.57-58).

## II.     The ALJ Properly Assessed the Medical Opinion Evidence

As discussed below, several of Plaintiff's care providers offered opinions that Plaintiff's ability to function is more limited than the ALJ recognized. Plaintiff argues that he is entitled to relief on the ground that the ALJ failed to articulate sufficient reasons for affording limited weight to the opinions of his treating physicians.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating

physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

   A. Barbara Steinmacher and Pam Agee

In the summer of 2016, Steinmacher and Agee, a nurse and social worker, respectively, each completed identical forms assessing Plaintiff's ability to function in fifteen separate categories of functioning. (PageID.640-46). Steinmacher concluded that Plaintiff experienced moderate limitations in five categories and marked limitations in the remaining categories. (PageID.640). Agee concluded that Plaintiff experienced marked limitations in five categories and extreme limitations in the remaining categories. (PageID.645). The ALJ afforded

11

these opinions "little weight" because they are contradicted by the medical record. (PageID.59-60).

Plaintiff's argument that the ALJ failed to provide sufficient reasons for discounting these opinions is unpersuasive for several reasons. First, the requirement that an ALJ articulate "good reasons" for affording less than controlling weight to a care provider's opinion only applies to opinions rendered by acceptable medical sources. *See, e.g., Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). However, neither Steinmacher nor Agee are considered acceptable medical sources. *See* 20 C.F.R. §§ 404.1502; 404.1513(a); *Noto v. Commissioner of Social Security*, 623 Fed. Appx. 243, 248 (6th Cir., Nov. 16, 2015). Thus, the ALJ was not obligated to provide good reasons for discounting their opinions.

Second, the form that Steinnacher and Agee completed does not constitute a "medical opinion" to which deference must be accorded. *See* 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (a medical opinion is defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also*, *Ashley v. Commissioner of Social Security*, 2014 WL 1052357 at *7-8 (W.D. Mich., Mar. 19, 2014) (where "check-box forms" are unaccompanied by explanation, treatment notes, or other evidence, ALJ properly rejected such). Finally, as the evidence discussed reveals, substantial evidence supports the ALJ's conclusion that the extreme opinions expressed by Steinnacher and Agee are contradicted by the evidence of record. This argument is, therefore, rejected.

12

B.     Paul Winkler, Ph.D.

On June 6, 2013, Plaintiff participated in a consultive examination conducted by Dr. Winkler. (PageID.421-26). The doctor concluded that Plaintiff "presents with clear symptoms of ongoing anxiety & excitability." (PageID.425). The doctor further described Plaintiff's "task capabilities" as "very limited at present due to pattern of acute emotional lability." (PageID.425). Plaintiff argues that the ALJ failed to provide good reasons for affording limited weight to Dr. Winkler's opinions.

First, while Dr. Winkler may be an acceptable medical source, his opinion is nevertheless not entitled to any deference because he examined Plaintiff on a single occasion and, therefore, does not qualify as a treating physician. *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). Moreover, Dr. Winkler did not articulate any specific functional limitations from which Plaintiff allegedly suffers. In other words, the doctor did not articulate a medical opinion to which any deference is warranted. As the ALJ correctly concluded, Dr. Winkler's opinion "is very vague and therefore provides essentially no insight into the claimant's ability to function." (PageID.60). Accordingly, this argument is rejected.

C.     Dr. Lori Katzman

Plaintiff argues that he is entitled to relief on the ground that the ALJ "did not evaluate [Dr. Katzman's] findings regarding Plaintiff's ability to work." Plaintiff has failed, however, to identify any medical opinion offered by Dr. Katzman which is contrary to the ALJ's RFC assessment. In support of this argument, Plaintiff cites to a single page in the record, (PageID.517), which does not contain any statement, observations, or opinions by Dr. Katzman. Accordingly, this argument is rejected.

**III.      The ALJ Properly Evaluated Plaintiff's Impairments**

Finally, Plaintiff argues that he is entitled to relief because the ALJ failed to find that Plaintiff suffered from traumatic brain injury. At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error"). A review of the ALJ's decision makes clear that he considered the entire record and all Plaintiff's impairments and limitations. Moreover, in support of his argument Plaintiff has failed to identify any evidence that Plaintiff suffered traumatic brain injury. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: February 21, 2019         /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 U.S. Magistrate Judge